Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 2 C 7088 | **DATE** | 9/30/2003 |
| **CASE TITLE** | Concealed Carry, Inc. et al vs. City of Chicago et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter MEMORANDUM, OPINION AND ORDER: The Court grants in part and denies in part the motions to dismiss [12-1], [15-1].

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | SEP 30 2003 date docketed | | 35 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| TSA | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Concealed Carry, Inc., an Illinois Corporation, and John Birch, President of Concealed Carry, Inc. | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) |
| | ) No. 02 C 7088 |
| City of Chicago, a municipal corporation of the State of Illinois, Richard M. Daley, Mayor of the City of Chicago, Terry Hilliard, Superintendent of Police of the City of Chicago, The Chicago Board of Education, Michael W. Scott, President of The Chicago Board of Education, Arne Duncan, C.E.O. of The Chicago Board of Education, and the Federal Protective Service of the General Services Administration of the United States of America, the United States of America, and Charles Myers, Regional Director of the Federal Protective Service, Great Lakes Region of the General Services Administration of the United States of America | )<br>) Wayne R. Andersen<br>) District Judge<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

DOCKETED
SEP 3 0 2003

## MEMORANDUM, OPINION AND ORDER

This matter comes before the Court on the motions of Defendants, City of Chicago, Richard M. Daley, Mayor of the City of Chicago, Terry Hilliard, Superintendent of Police of the City of Chicago (collectively, "City"), The Chicago Board of Education, Michael W. Scott, President of The Chicago Board of Education, Arne Duncan, C.E.O. of The Chicago Board of Education (collectively, "Board") and the Federal Protective Service of the General Services Administration of the United States of America, Charles Myers, Regional Director of the Federal Protective Service, Great Lakes Region of the General Services Administration of the United States of America, and the United



States of America, (collectively, "Federal Defendants") to dismiss Plaintiffs' First Amended Complaint. For the reasons set forth below, the Court grants in part and denies in part the motions to dismiss.

## BACKGROUND

Concealed Carry ("CC") and John Birch ("Birch"), (collectively, "Plaintiffs") filed their First Amended Complaint against the City, the Board and the Federal Defendants alleging that Defendants' actions have, and will again unless enjoined, deprived Plaintiffs of their rights, privileges, and immunities secured by the United States Constitution. Plaintiffs allege that Defendants' actions in relation to an anti-handgun violence rally violated their rights guaranteed them under the First, Fourth, and Fourteenth Amendments to the Constitution. For purposes of this motion, the Court is obligated to take as true the following alleged facts, which come from Plaintiffs' First Amended Complaint.

Plaintiff Concealed Carry is a corporation organized to advocate the preservation of Second Amendment right to bear arms. Plaintiff John Birch is the President of Concealed Carry. Defendants are the City, the Board, and the Federal Protective Service, which is responsible for the security and protection of Federal public buildings.

Plaintiffs allege that on April 15, 2001, the Illinois Council Against Handgun Violence ("ICHV") applied for, and was issued, a Permit for Use of Space in Public Building and Grounds ("permit") to conduct a rally at the Federal Plaza, located at 230 South Dearborn, Chicago, Illinois. The permit granted ICHV permission to use the Federal Plaza to conduct its annual "anti-handgun violence rally" from 6:00 a.m. to 5:00 p.m. on Monday, October 7, 2002, as well as a "First Monday" event at noon. The rally was co-sponsored by the City and the Chicago Public Schools. First

2

Monday events allegedly are scheduled to occur every first Monday in October, corresponding with the formal opening of the United States Supreme Court's fall term and upcoming November local, state and national elections. Many politicians attend First Monday events and speak against handgun violence to the assembled public and media. The First Monday events also host an anti-handgun violence essay contest for the area's children. Many children and teachers from the Chicago Public School System are bussed in to attend the awards portion of this event.

Plaintiffs' allegations are primarily based in free speech and equal protection violations under the First and Fourteenth Amendments. Specifically, Plaintiffs claim this anti-handgun violence rally "constitutes an impermissible and unconstitutional subsidy in support of the ICHV and its political positions through the usage of public resources and assemblage of uninterested children and their on-the-public-clock teachers." Plaintiffs allege that this event is designed to make it appear to the public that these school children are concerned about gun violence. In fact, Plaintiffs allege that when they asked the children why they were there, some replied, "they were paid small sums of money to attend" or that "they were told Michael Jordan was going to be here." Consequently, Plaintiffs claim that ICHV's, Daley's, and other politicians' political viewpoints have been unconstitutionally subsidized by the payment of teacher salaries and Chicago Public Schools resources, and the use of children who are bused to said rallies. Plaintiffs claim that these children should be in school and not be indoctrinated into views designed to influence the adoption of legislation and judicial rulings which deprive them, when attaining adulthood, of their rights under the Second Amendment.

In the past, Plaintiffs have attended these rallies to protest the improper transportation of the students and teachers on school time and at taxpayer's expense, as well as the Mayor's plans to

3

"eliminate citizens' rights to own, possess and use firearms." Plaintiffs claim that the Chicago Police, without intervention from the Federal Protective Service, selectively scanned the crowd in attendance and picked out, herded - and in some cases shoved - Concealed Carry members, merely suspected opponents of the rally, before the event even began. They were quickly removed to the far end of the Plaza behind a metal barricade where they claim that no one could see or hear them and were told that if they disobeyed this police order, they would be arrested. Plaintiffs claim that through these actions, their right of free speech has been diluted and chilled. Plaintiffs seek protection of their constitutional rights to assemble, speak, demonstrate and protest on an equal basis, not influenced or suppressed by Defendants.

Plaintiffs have filed a seven count First Amended Complaint alleging that Defendants violated their First Amendment, Fourth Amendment, and Fourteenth Amendment rights under color of law in violation of 42 U.S.C. § 1983, 1985. Plaintiffs also allege violations of numerous state law provisions. Plaintiffs seek an order enjoining Defendants from acting in concert with one another to remove Plaintiffs to the far end of the Federal Plaza at future ICHV rallies. Plaintiffs seek to freely protest at future First Monday Rallies, as well as a judgment declaring that the Defendants past removal of Plaintiffs was unconstitutional. Plaintiffs seek damages, injunctive and declaratory relief against the City and the Board, and injunctive and declaratory relief only against the Federal Defendants.

## DISCUSSION

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal based upon lack of subject matter jurisdiction. When ruling on such a motion, the District Court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff. *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). "The district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* (citations omitted).

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. In ruling on a motion to dismiss, the court must construe the complaint's allegations in the light most favorable to the plaintiff and all well pleaded facts and allegations in the plaintiff's complaint must be taken as true. *Bontkowski v. First Nat'l Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993), *cert. denied*, 510 U.S. 1012 (1993). The allegations of a complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-6 (1957). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege facts sufficiently setting forth the essential elements of the cause of action. *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992), *cert. denied*, 506 U.S. 893 (1992). With these principles in mind, the Court evaluates Defendants' motions.

### I. Standing

Defendants argue that Plaintiffs do not have standing to raise the claims asserted in the First Amended Complaint. However, we find that Plaintiffs have alleged an injury to a legally protected

5

interest. Plaintiffs allege that their First, Fourth, and Fourteenth Amendment rights have been violated by the Defendants' actions. Furthermore, Plaintiffs allege that they did, in fact, suffer an injury due to their removal from the Federal Plaza and being segregated away from the rally due to the content of their message. Therefore, we find that Plaintiffs do have standing to raise the claims asserted in the First Amended Complaint.

II. Injunctive And Declaratory Relief

Plaintiffs seek an injunction to prevent future harm to their Constitutional rights and a declaratory judgment. However, Defendants argue that since Plaintiffs have sought, and obtained, a permit to use the Federal Plaza on October 6, 2003 (the only currently scheduled rally), Plaintiffs have failed to present a justiciable controversy at this time. Defendants rely on Article III of the United States Constitution, which requires there to be an actual case or controversy and not merely an advisory opinion. *Flast v. Cohen*, 392 U.S. 83, 94-95 (1968).

Because Plaintiffs have obtained a permit to be heard at the only currently scheduled rally and because injunctive relief obviously does not apply to remedy past conduct, we agree with Defendants that Plaintiffs' complaint for injunctive and declaratory relief is moot and does not present a controversy at this time. Moreover, it is doubtful whether Plaintiffs could satisfy the requirements necessary to secure an injunction, namely likelihood of success on the merits and irreparable injury.

For these reasons, all requests for injunctive and declaratory relief are stricken from Plaintiffs' First Amended Complaint. Because Plaintiffs seek only injunctive and declaratory relief against the Federal Defendants, all claims are hereby dismissed against the Federal Defendants.

### III. Official Capacity Claims

Before discussing each Count separately, we dismiss all claims against the individual Defendants in their official capacities. The claims against the individual Defendants in their official capacities are essentially claims against the City or the governmental agency employing them. *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985); *Admiral Theatre v. City of Chicago,* 832 F. Supp. 1195, 1200 (N.D. Ill. 1993). As such, the official capacity claims are redundant to the separate claims expressly alleged against the City, the Board, and the Federal Defendants. Thus, the official capacity claims are dismissed. Because Defendants Hillard, Scott, Duncan, and Myers are sued only in their official capacities, these Defendants are hereby dismissed from this lawsuit.

### IV. Allegations Against The Board

Plaintiffs attempt to allege causes of action against the Board for violations of their First and Fourteenth Amendments through 42 U.S.C. 1983, 1985, as well as for analogous state law claims. Plaintiffs argue that the Board expended public funds in a manner which supported a political ideology opposite of that of Plaintiffs. Plaintiffs claim that the actions of the Board amount to an unconstitutional subsidy–taxpayer funds being used to support a political rally.

We find that Plaintiffs have not properly alleged any causes of action against the Board. As to the First Amendment claim, Plaintiffs do not allege that the Board ever denied Plaintiffs' supporters a chance to speak or moved them to the side of the plaza. The Board had absolutely nothing to do with the decision to move Plaintiffs to the side of the Plaza. The Board simply co-sponsored a rally.

As to the Equal Protection claim, Plaintiffs allege that the Board must afford all points of view and provide an equal opportunity for Plaintiffs to express their point of view, or the equal

7

protection clause is violated. (First Amended Complaint ¶ 39). However, Plaintiffs have not alleged that their political views were ever unreasonably rejected by the Board. Further, as the Board's discretionary decision to endorse anti-gun violence policies has a clearly rational basis, the Board's participation in ICHV programs does not violate equal protection under the Constitution. Plaintiffs have their recourse in the political process. *See FCC v. Beach Communications Inc.*, 508 U.S. at 314.

For these reasons, we find that Plaintiffs have failed to state any legally cognizable cause of action against the Board. Therefore, the motion to dismiss filed by the Board is granted in its entirety. Since all claims have been dismissed against the Board and the Federal Defendants as previously mentioned, the remainder of this Opinion will address claims against only the City.

V. First and Fourteenth Amendment Claims

In Count I of the First Amended Complaint, Plaintiffs allege violations of their rights to free speech and Equal Protection under the First and Fourteenth Amendments to the Constitution. Plaintiffs argue that the enforcement of the permitting scheme violates the First Amendment and Equal Protection Clause because its members were not allowed to remain in the permitted area and that such action constitutes impermissible content-based discrimination. Plaintiffs allege that they were segregated away from the permitted rally because of the content of their message. This action, they claim, is beyond mere traffic control and amounts to restriction of their expression. *See, e.g., Cox v. Louisiana,* 379 U.S. 536, 555-56 (1965). Plaintiffs state that the lack of standards used by the Defendants to segregate is inhibited discretion, which is in and of itself a prior restraint that may result in censorship. *11126 Baltimore Blvd., Inc. v. Prince George's County, Md.* 58 F.3d 988, 996 (4th Cir. 1995), *cert. denied,* 516 U.S. 1010 (1995).

This Court must construe the First Amended Complaint's allegations in the light most favorable to the Plaintiffs, and all well pleaded facts and allegations in the Plaintiffs' complaint must be taken as true. At this stage in the litigation, the Defendants' actions in moving Plaintiffs' counter-demonstration to the side may be deemed content-based. The issue in this case is typical of First Amendment cases–did the authorities go too far and encroach on citizens' First Amendment rights? As discovery proceeds, we will have a clearer picture as to whether Defendants' actions were justified, whether Defendants' actions were narrowly tailored to serve a significant government interest, and whether Defendants left open ample channels of alternative communication. Thus, we will determine whether Defendants' time, place and manner restrictions were reasonable at the summary judgment stage. However, at this juncture, Plaintiffs have adequately alleged a cause of action for violation of their First Amendment rights. For these reasons, we will deny the motions to dismiss the First Amendment and Equal Protection allegations in Count I.

VI. Fourth Amendment Claims

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons . . .against unreasonable . . . seizures, shall not be violated." Plaintiffs contend that the Chicago Police violated their Fourth Amendment rights when they "seized and removed members from the Plaza displaying deadly force and under threat of arrest upon mere suspicion and without probable cause."

To determine whether Plaintiffs have stated a cause of action under the Fourth Amendment, we must look to whether the Defendants' alleged conduct constituted a seizure and, if so, whether the seizure was objectively unreasonable in light of the factual allegations. *Donovan v. City of*

*Milwaukee*, 17 F.3d 944, 948 (7th Cir. 1994). "[A] person has been 'seized' within the meaning of the Fourth Amendment . . . if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).

In this case, Plaintiffs have alleged that they were escorted and moved to a different part of the Plaza. We find that Plaintiffs have not properly alleged a violation of the Fourth Amendment. Plaintiffs, at all times, were free to leave. They simply were not permitted to protest at a certain section of the Plaza. Such allegations do not amount to a violation of the Fourth Amendment. Therefore, Plaintiffs Fourth Amendment claims are dismissed.

VII. Section 1983 Claims

Section 1983 provides a cause of action for the "deprivation of any rights, privileges, or immunities secured by the constitution and laws" of the United States. Therefore, plaintiffs suing under Section 1983 must point to another source, either the United States Constitution or federal statutes, for the substantive rights they seek to enforce. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979).

42 U.S.C. §1983 does not apply to actions by the federal government, but rather to actions by state and local entities. *Belhomme v. Windall*, 127 F.3d 1214, 1217 (7th Cir. 1997), *cert. denied*, 523 U.S. 1100 (1998). For these reasons, this Court additionally will dismiss the 42 U.S.C. §1983 claims against the Federal Defendants.

Plaintiffs must also allege a basis for municipal liability to recover from the City under § 1983. The Plaintiffs must allege that: (1) the City had an express policy to discriminate, (2) the City had a widespread custom or practice to discriminate, or (3) a person with final policymaking

authority committed the act of discrimination. *Kujawski v. Board of Com'rs of Bartholomew County*, 183 F.3d 734, 737 (7th Cir.1999). In this case, Plaintiffs have alleged a widespread custom or practice of being denied the right to express their viewpoint at First Monday rallies. Moreover, Plaintiffs have named the Mayor as a person with final policy-making authority. At this point, the Court cannot conclude that the Plaintiffs will be unable to prove a set of facts that establish that a custom or practice of discrimination existed within the City to deny Plaintiffs the ability to promote their pro-Second Amendment views. Moreover, Plaintiffs have alleged that a person with final policy-making authority (the Mayor) caused the alleged constitutional injury.

Therefore, viewing the facts in the light most favorable to Plaintiffs, we find that they have adequately alleged a basis for municipal liability sufficient to survive a motion to dismiss.

VIII. Section 1985 Claims

In Count III of Plaintiffs' First Amended Complaint Plaintiffs allege that the Defendants conspired to violate the Plaintiffs' civil rights in violation of 42 U.S.C. § 1985. To state a claim, Plaintiffs must allege: 1) an agreement between two or more persons; 2) to deprive the Plaintiffs of their constitutional rights; 3) some overt act in furtherance of the agreement; and 4) injury. *Indianapolis Minority Contractors Ass'n, Inc. v. Wiley*, 187 F.3d 743, 754 (7th Cir. 1999).

Plaintiffs have not specified which subsection of Section 1985 they seek to come under. Because subsections (1) (preventing officers from performing duties) and (2) (obstructing justice, intimidating party, witness or juror) are plainly inapposite, Plaintiffs must intend to assert a claim under Section 1985(3). Section 1985(3) was originally intended to protect against conspiracies to deprive persons of their constitutional rights due to race. *Hampton v. Hanrahan*, 600 F. 2d 600,

623, (7th Cir. 1979). While the scope of Section 1985(3) has since been broadened somewhat, it still serves to protect only those who are members of a traditionally suspect classification. *Griffin v. Breckenridge*, 403 U.S. 88, 102-103 (1971); *Payton v. Presbyterian-St. Luke's Medical Center*, 184 F.3d 623, 632 (7th Cir. 1999); *Anderson v. Cornejo*, 225 F. Supp. 2d 834, 866 (N.D. Ill. 2002).

Conspiracy claims based upon disparate political views, such as those gun views alleged by Plaintiffs, are not within the classifications of persons to be protected by Section 1985. *See Grimes v. Smith*, 776 F.2d 1359, 1366 (7th Cir. 1985). The Supreme Court stated in *Griffin* that, in order to avoid turning Section 1985(3) into a general federal tort law, the statutory language requiring intent to deprive of equal protection or equal privileges and immunities under the law means that there must be some racial or other class based invidious discriminatory animus behind the conspirators' actions. *Griffin*, 403 U.S. at 102; *Parker v. Chicago Housing Authority*, 730 F. Supp. 115,120-21 (N.D. Ill. 1989).

In this case, neither Plaintiff can allege membership in any classification considered suspect under Section 1985. Consequently, the Section 1985 claims contained in Count III of the First Amended Complaint are dismissed. *See McCalden v. California Library Association*, 919 F. 2d 538, 546 (9th Cir. 1990) (group questioning accuracy of Holocaust historians is not a protected class for Section 1985 purposes); *Prochaska v. Fediaczko*, 473 F.Supp. 704, 709 (W.D. PA., 1979) (individual's exercise of First Amendment rights did not qualify as a protected class); *Mundy v. Weinberger*, 554 F. Supp. 811, 822-23 (Dist. Col. 1982) (group critical of Defense Department policies not a protected class). Moreover, an additional reason to dismiss the Section 1985 claims against the Federal Defendants is because Section 1985 does not apply to actions by the federal government, but rather only to actions by state and local entities. *Belhomme v. Windall*, 127 F.3d

1214, 1217 (7th Cir. 1997), *cert. denied*, 523 U.S. 1100 (1998). Therefore, the Section 1985 claims against all Defendants are dismissed.

IX. Plaintiff's State Law Claims

A. Article I, Section 1

This provision deals with the inherent rights of life, liberty, and the pursuit of happiness. It repeats the relevant portions of the Declaration of Independence. It is not, by itself, considered a limitation of governmental activity. *Kunkel v. Walton*, 689 N.E.2d 1047, 1056-57 (Ill. 1997). Accordingly, there is no cause of action under this provision of the Illinois Constitution, and this claim is dismissed.

B. Article I, Section 2

Plaintiffs allege that the actions of the Defendants amount to violations of the equal protection provisions of the Illinois Constitution. The guarantee of equal protection requires that the government treat similarly situated individuals in a similar manner. *Committee For Educational Rights v. Edgar*, 174 Ill.2d 1, 32-33 (1996). The equal protection analysis under the Illinois Constitution is the same as under the Federal Constitution. *In re A.A.*, 181 Ill.2d 32, 36-37 (1988); *DeWoskin v. Loew's Chicago Cinema*, 306 Ill. App. 3d 504, 517 (1st Dist. 1999). Therefore, the state law equal protection claim will remain against the City.

C. Article I, Sections 4 and 5

Sections 4 and 5 of Article I of the Illinois Constitution deal with the rights to free speech and to assemble and petition. The analysis under these provisions of the Illinois Constitution are the same as under the U.S. Constitution. Therefore, since we have denied the motions to dismiss

with regard to the First Amendment claim under the U.S. Constitution, we similarly deny the motions with regard to these provisions of the Illinois Constitution.

### D. Article I, Section 6

This provision deals with search and seizure. Because we have dismissed Plaintiffs' federal Fourth Amendment claims in the First Amended Complaint, we likewise dismiss the state law allegations pertaining to unlawful seizure.

### E. Article I, Section 22

This provision deals with the right to bear arms subject to the police power. Nowhere in the complaint is there any allegation that, in conjunction with the Illinois Coalition Against Handgun Violence rally, the City (or its officers or employees) in any way infringed on anyone's Illinois constitutional right to bear arms. Once again, simply reciting a provision of law and claiming it was violated fails to state a cause of action. *Id.* To the extent that the complaint might be read to be a claim that the City (or its officers or employees) somehow limited the ability to carry handguns or concealed weapons in violation of this provision, the Court notes that these claims have been considered and rejected by the courts. See, e.g., *Qualici v. Village of Morton Grove*, 695 F.2d 261 (7th Cir. 1982); *Kalodimos v. Village of Morton Grove*, 103 Ill. 2d 483, 470 N.E.2d 266 (1984); *People v. Williams*, 60 Ill. App. 3d 726, 377 N.E.2d 285 (1st Dist. 1978). This portion of Count V is dismissed.

### F. Article I, Section 23

Article I, Section 23 of the Illinois Constitution deals with fundamental principals of preserving liberty and the citizen's obligations in a system of ordered liberty. "Both sentences of Section 23 are included as a Constitutional sermon and to serve a teaching purpose." Robert A.

14

Helman and Wayne W. Whalen, Constitutional Commentary, ILL. COMP. STAT. ANN. ILL. CONST. art. I, § 23 at 785 (1997). As such, this oratorical provision does not provide a legal standard for a cause of action. This portion of the complaint is dismissed.

G. <u>Article I, Section 24</u>

Article I, Section 24 of the Illinois Constitution deals with unenumerated rights. Plaintiffs' complaint does not hint at, much less identify, what unenumerated right it believes was violated. Nor can the Court even guess at what it might be. As such, this claim does not even meet the basic standard for pleading under Fed. R. Civ. P. 8 to give the Defendants notice of the claim against it. Thus, this claim is dismissed. *Cf. Glatt v. Chicago Park Dist.*, 847 F. Supp. 101, 103 (N.D. Ill. 1994).

H. <u>Respondeat Superior</u>

In Count VI of the First Amended Complaint, Plaintiffs plead an all-encompassing claim of respondeat superior against the City and the Board for actions of their officials and employees. "To be vicariously liable under the doctrine of respondeat superior, a tort, that is to say a civil wrong recognized as such by the law, must have been committed in the scope of employment." *Pyne v. Witmer*, 129 Ill. 2d 351, 359, 543 N.E.2d 1304, 1308 (1989); *Montgomery v. Petty Mgmt. Corp.*, 323 Ill. App. 3d 514, 517, 752 N.E.2d 596, 598 (1st Dist. 2001).

Although a Plaintiff may sue a local government unit under Section 1983, the local government unit cannot be held liable under Section 1983 on a respondeat superior theory for employing a tortfeasor. *See Monell v. Department of Social Services*, 436 U.S. 658, 690-91 (1978). Therefore, we dismiss the respondeat superior claims in Count VI of Plaintiffs' First Amended Complaint.

I. Illinois Tort Immunity Act

Plaintiffs have also brought a claim under section 9-102 of the Illinois Tort Immunity Act, 745 ILCS § 10/9-102, in Count VII of the First Amended Complaint. This section simply, "sets forth the parameters within which a local public entity may compromise and settle claims filed against it, and empowers that entity to pay any tort judgment or settlement for compensatory damages for which the entity, or an employee of the entity acting with the scope of employment is liable." *Carver v. Sheriff of LaSalle County*, No. 91108, 2003 WL 253780 at *7 (Ill. Sup. Ct. Feb. 6, 2003).

Section 9-102 claims are strictly relegated to the post-judgment stages of the litigation. *See Rosentreter v. Munding*, 736 F. Supp. 165, 171-72 (N.D. Ill. 1990). We, therefore, hold that a 9-102 claim cannot be brought prior to a judgment. Accordingly, the motion to dismiss this provision is granted.

X. Punitive Damages

Plaintiffs' claims for punitive damages are improper. Punitive damages are not recoverable against a municipality in a § 1983 suit. *City of Newport v. Fact Concerts*, 453 U.S. 247, 271 (1981). Municipalities are similarly immune from awards of punitive damages under Illinois law. *See* 745 ILCS 10/2-102. Accordingly, all punitive damages claims against the City are stricken from the complaint.

CONCLUSION

For the reasons set forth above, the Court grants in part and denies in part the motions to dismiss. The Court grants in its entirety the motion to dismiss filed by the Chicago Board of Education, Michael Scott, and Arne Duncan (# 15-1). The Court grants the motion to dismiss filed

by the Federal Defendants in its entirety (# 12-1). The Court grants the motion to dismiss filed by the City of Chicago in the following respects: all requests for declaratory and injunctive relief are stricken; the claims against Mayor Daley and Terry Hilliard in their official capacities are dismissed; the Fourth Amendment claims are dismissed; the 42 U.S.C. § 1985 claims are dismissed; the requests for punitive damages are stricken; the respondeat superior claims are dismissed; the claim brought pursuant to section 9-102 of the Illinois Tort Immunity Act is dismissed; and the claims brought pursuant to the following provisions of the Illinois Constitution are dismissed–Article I, Section 1; Article I, Section 6; Article I, Section 22; Article I, Section 23; and Article I, Section 24. ( Motion # 17, 19). The City's motion to dismiss is denied in all other respects.

It is so ordered.

Wayne R. Andersen
United States District Judge

Dated: September 30, 2003